IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 12-cv-003066-LTB

MARLANA K. MARTINEZ,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

_____

ORDER
_____

Plaintiff, Marlana K. Martinez, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§1381-1383c. Jurisdiction is proper under 42 U.S.C. §405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the Commissioner's final order.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her application for supplemental security income filed on August 31, 2009. [Administrative Record ("AR") 167] After the application was initially denied on May 26, 2010, an Administrative Law Judge ("ALJ") conducted an evidentiary hearing on June 8, 2011, and issued a written ruling on August 1, 2011. [AR 30-44, 51-64, 76] In that ruling the ALJ denied her application on the basis that

she was not disabled because Plaintiff had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy (Step Five). [AR 43-44] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1] *See* 20 C.F.R. §416.1481. Plaintiff timely filed her complaint with this court seeking review of the Commissioner's final decision.

## II. FACTS

Plaintiff was born on September 4, 1991. [AR 64, 114] She was just under 18 years of age at the time she filed her application seeking SSI benefits on August 31, 2009, but was 19 years of age at the time of the ALJ's hearing and had obtained a high school education. [AR 167, 191, 207] She had worked for a short period of time in various positions at McDonalds. [AR 68, 187] In her application, Plaintiff alleged she was disabled due to her scoliosis. [AR 134, 176]

The medical records reveal that in 2007, Plaintiff underwent corrective spinal surgery with hardware placement for treatment of her scoliosis. [AR 54, 261] Thereafter, between September of 2008 through January of 2009, Plaintiff reported to the emergency department of the San Luis Valley Regional Medical Center four times complaining of exacerbated back pain, which was treated with pain medications. [AR 259-64 (9/12/08), AR 252-7 (9/28/08), AR 242-51 (10-1-08), AR 236-41 (1-3-09)]. Plaintiff had her gall bladder removed in March of 2009. [AR 268-96]

In June of 2009, Plaintiff began seeing Robert Magnuson, M.D., at Peak Vista Community Health Centers for her general health care. [AR 370-89] During a visit for

medication refills on August 7, 2009, Plaintiff reported that her back pain was getting worse. [AR 367-69] Her examination revealed tenderness to palpation (TTP) to her back, but indicated she was alert and had a normal gait, normal muscle tone, and normal strength. [AR 368]

On October 10, 2009, Plaintiff went to the emergency room at Memorial Hospital seeking treatment following a motor vehicle accident. [AR 333-37] She initially reported no complaints, but then her back started to "stiffen up." [AR 336] An examination showed that she was alert and in no acute distress with a steady gait, an intact neurological status, and no spinal tenderness. [AR 335-37] Plaintiff sought follow-up care, two weeks later on October 26, 2009, from Dr. Magnuson, during which she reporting that her back pain had worsened with the car accident and her medications were "[m]oderately effective." Examination showed that she had tenderness to palpation (TTP) of the low back, but she retained a normal gait, normal muscle strength and tone, normal joints, full range of motion, normal motor function and normal reflexes. [AR 363-66]

On December 30, 2009, Plaintiff saw Mindy Siegel, M.D., for her back pain. Dr. Siegel noted that Plaintiff had been stable and "done very well" since her spinal surgery, until her car accident in October. [AR 326] Upon examination, Plaintiff had full motor strength and intact reflexes. However, Dr. Siegel determined one of the screws in the hardware in her back had come loose, after her car accident, and was causing spasms. Dr. Siegel performed outpatient surgery later that day to fix the loose screw. [AR 326-32; AR 217]

On January 22, 2010, Dr. Magnuson prescribed Plaintiff medications to control migraines and anxiety. [AR 359-63] On January 29, 2010, Plaintiff went to Colorado Counseling & Consulting Services reporting several anxiety-related symptoms – such as irritability,

3

nervousness and trouble sleeping – to Sandra Yaney, a Nurse Practitioner. [AR 298- 307] Plaintiff's mental examination indicated that Plaintiff had an irritable mood and impaired concentration and insight, but she had good eye contact; normal speech; appropriate and responsive thought content; organized, goal-directed, logical, and linear thought processes; intact memory; intact judgment; normal motor activity; and no suicidal thoughts. [AR 307]  Ms. Yaney listed Plaintiff's diagnoses as:  a mood disorder, post-traumatic stress disorder (PTSD), anxiety disorder, and insomnia, and assessed a GAF score of 55. [AR 307]  She prescribed medications and referred Plaintiff for counseling. [AR 299-307]  In February 2010, Plaintiff again saw Ms. Yaney, who noted that Plaintiff was much less angry and anxious.  During this visit, Ms. Yaney adjusted her medications and indicated impressions of bipolar disorder and anxiety disorder. [AR 305]

On May 21, 2010, R. Brill, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and opined that since September of 2009, Plaintiff had a mood disorder, and an anxiety/PTSD disorder which caused moderate functional difficulties in maintaining concentration, persistence or pace. [AR 394]  Dr. Brill opined that Plaintiff was capable of performing work involving simple tasks in a low public contact setting. [AR 404, 408-09]  In conclusion, he indicated that:

> Medication is currently controlling her anxiety and depression fairly well.
> Although she does have some difficulty dealing with others, her social skills and
> ADLs are not significantly limited.  Thus, she appears capable of understanding
> and carrying out simple tasks, on a sustained basis, in a low public contact setting.
> [AR 411]

On May 25, 2010, M. Brenner, M.D., a state agency physician, reviewed Plaintiff's medical records. [AR 412-20]  He noted a primary diagnosis of post-traumatic myalgia, a

4

secondary diagnosis of chronic cholecystitis and another alleged impairment of S/P fusion for scoliosis three years ago. [AR 412] Dr. Brenner opined that:

> Claimant retains full motor strength of all extremities, and walks with a normal gait, despite some TTP to her lower back. She is also pregnant, which most likely contributes to her back pain. Her cholecystitis condition is under fairly good control with medication. [AR 419]

Dr. Brenner concluded that Plaintiff had physical limitations consistent with the ability to perform a light work with occasional postural limitations of climbing, balancing, stooping, crouching, and crawling. [AR 414] Finally, the record contained photocopies of x-rays of Plaintiff's back, revealing her spinal hardware, submitted by her in June 2011. [AR 426-33]

At the hearing before the ALJ, Plaintiff testified that she had previously worked at McDonalds, but had difficulty standing and sitting too long, and becoming easily irritated with people. [AR 53-54] She testified that she experienced pain with prolonged sitting, standing, and lying down. [AR 59] She said she had severe back pain that was, at times, worse than being in labor. [AR 55] To deal with her pain, Plaintiff constantly rested, used breathing techniques, and took showers to relax her muscles. [AR 55-56] She testified that she could not sleep due to the pain. [AR 58] Plaintiff reported that her pain medications caused dizziness and irritability. [AR 56] She testified that her day consisted of getting herself ready, relaxing, and trying to enjoy her children, and she sometimes attended church. [AR 56, 59] Plaintiff lives with her grandmother, who helped her, and that she said she tried to help with the dishes. [AR 57] Plaintiff's grandmother also testified that Plaintiff was often irritable, angry and frustrated. [AR 61] She helped take care of Plaintiff's children, including lifting the baby, along with Plaintiff's mother and other grandmother. [AR 62] Plaintiff's grandmother indicated that she transported Plaintiff

where she needed to go. [AR 62]

## II. LAW

The record reveals that Plaintiff turned 18 years of age just a few days after she filed her application seeking SSI benefits. [AR 34-40] As a result, the ALJ applied the child disability standard to the short time period of time (three or four days) before Plaintiff turned 18, and concluded that because she did not have an impairment or combination of impairments that met, medically equaled any listing, or functionally equaled the listing, Plaintiff was not disabled prior to attending age 18. *See* 20 C.F.R. §416.924(a). [AR 34-40] Plaintiff does not challenge the ALJ's determinations or findings made pursuant to the child disability standards.

As a result, I review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is disabled under Title XVI of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. §416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §416.920(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to

one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since the date she filed her application (Step One). [AR 34] The ALJ further determined that since attaining the age of 18, Plaintiff had not developed any new impairments and she continued to have the severe impairment of scoliosis with residuals of multiple stabilization surgeries (Step Two), but that she did not have an impairment or combination of impairments that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 41] The ALJ then determined that Plaintiff had the RFC to perform the full range of sedentary work. [AR 43] After ruling that Plaintiff did not have any past relevant work (Step Four), the ALJ went on to determine that Plaintiff could perform work existing in significant numbers in the national economy (Step Five). [AR 43-33] As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and,

therefore, was not under disability as defined by the SSA. [AR 44]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)(*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981). With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI.  ISSUES ON APPEAL

A.  Weighing Opinion Evidence

On appeal, Plaintiff first contends that the ALJ erred in his assessment of the medical opinion evidence.  When determining the weight to be given to medical opinions related to a claimant's impairments and limitations, treating physician opinions and examining physician opinions are entitled to more weight than the opinions of non-examining physicians who have never seen the claimant.  *Martinez v. Astrue*, 422 Fed. Appx. 719, 724 (10th Cir. 2011)(not selected for publication)(*citing* 20 C.F.R. §416.927(d)(1); Soc. Sec. Ruling 96–6p; *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)).  However, where an ALJ otherwise reduces the weight given to a treating physician's opinion, it is not error to rely on a non-examining physician's opinion.  *See e.g. Gonzales v. Colvin*, 515 Fed. Appx. 716, 719 (10th Cir. 2013)(not selected for publication).

In this case, the only opinion evidence contained in the record comes from state agency reviewing doctors.  I note that to the extent Plaintiff appears to argue that the medical records somehow reveal a requirement or opinion from a treating physician that she is limited in her ability to stand or sit for prolonged periods of time, and from lifting, bending, twisting, etc., I disagree.  The records only note Plaintiff's own unsupported assertion – in her Functional Report provided to the SSA dated February 1, 2010 – that an unspecified doctor says she is so limited as a reason why she does not do house or yard work. [AR 213]  Plaintiff provides no medical record support or evidence for this undocumented assertion.

As to her mental functioning, Dr. Brill – the state agency psychologist – indicated that despite Plaintiff's moderate functional difficulties in maintaining concentration, persistence or

9

pace, it was his opinion that she was capable of performing work involving simple tasks, on a sustained basis, in a low public contact setting. [AR 41]  In weighing this opinion, the ALJ first ruled that Plaintiff's medically determinable impairments of anxiety and affective disorder, considered both singly and in combination, "do not meet the durational requirement of a severe impairment expected to last a year or more." [AR 41]  The ALJ noted that the only mental health records available – treatment records from Colorado Counseling & Consulting Services from two visits in January and February of 2010 – suggest a situational or postpartum depression. [AR 41]  As such, the ALJ went on to find that "[b]ecause the mental impairments to not meet the duration requirement, the undersigned gives little weight to the opinion of the State agency medical consultant [Dr. Brill], who concluded that the claimant would have moderate limitations in the ability to maintain concentration, persistence or pace."  [AR 41]

Plaintiff acknowledges that Dr. Brill's opinion is "not very weighty to begin with" and that ALJs are not bound by state agency doctor's findings "about the existence and severity of any symptoms."  She contends, however, that an ALJ "must consider and weight [such] opinions . . . under the applicable rules . . . and must explain the weight given to the decision" pursuant to Soc. Sec. Ruling 97-6p.  I find that the ALJ's order here sufficiently considered and weighed Dr. Brill's opinion.  In so doing, I reject Plaintiff argument that the ALJ improperly "usurped" Dr. Brill's opinion by substituting his own.  Instead, the ALJ's order provides both his reasoning and reference to the medical records in support of his decision to give little weight to Dr. Brill's conclusion that Plaintiff's short-term/controlled mental impairments would moderately limit her long term ability to maintain concentration, persistence or pace.

In addition, to the extent that Plaintiff argues that the ALJ failed to assess the medical opinion of Ms. Yaney – a Nurse Practitioner at Colorado Counseling & Consulting Services – when determining Plaintiff's mental limitations, I note that Ms. Yaney's opinion cannot establish the existence of a medically determinable impairment, or provide a medical opinion, as she is not an acceptable medical source. *See* 20 C.F.R. §416.920 & §416.913(a). Moreover, while the ALJ generally should explain the weight given to opinions from 'other sources,' this may be done by a "discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Soc. Sec. Ruling 06-03p. Here, the ALJ discussed Ms. Yaney when he explained that her minimal medical records – from two visits in January and February of 2010 – were isolated and suggested only situational issues as the record did not contain any other mental health treatment. More importantly, Ms. Yaney's records do not contain any "opinion" or assessment of Plaintiff's limitations, and her diagnoses and act of prescribing medication does not indicate any specific mental functioning related to Plaintiff's ability to work long term. Finally, to the extent that Plaintiff contends that Ms. Yaney's one-time GAF assessment (on their initial visit on January 29, 2010, of 55 [AR 307]) constituted an opinion of Plaintiff's mental limitations of her ability to work, I disagree. Through a series of unpublished decisions, the Tenth Circuit has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See Miller v. Astrue,* 2010 WL 3586226 (E.D.Okla. 2010)(not reported)(*citing Lee v. Barnhart*, 2004 WL 2810224, 3 (10th Cir. 2004); *Eden v. Barnhart*, 2004 WL 2051382, 2 (10th Cir. 2004)); *Lopez v. Barnhart*, 2003 WL 22351956 (10th Cir. 2004))(concluding that GAF scores in that 50–55 range "would not affect her occupational abilities"); *see also Seymore v. Astrue*, 478 Fed. App'x 522 (10th Cir.

2012)(not selected for publication)(ruling that "the ALJ was correct in disregarding the additional GAF score of 52 since it was reported by a counselor who is not an acceptable medical source").

As to the state agency physician opinion related to Plaintiff's physical limitations, the ALJ found that Dr. Brenner's report "concluded that the claimant retained the capacity for light work, with postural activities to be performed on no more than an occasional basis."  The ALJ noted that Dr. Brenner "cited extensively from records, which showed good gait, no tenderness in the spine, good strength, and good motion." [AR 43]  As such, the ALJ gave "significant weight" to Dr. Brenner's opinions, "since they are based on a review of several treatment records, by a physician who is familiar with the regulations and standards for disability in the Social Security system, and are consistent with the evidence as a whole." [AR 43]  The ALJ did not fully accept Dr. Brenner's opinion, however, but instead gave it "significant" weight and, then, discounted it by reducing the exertional capacity from light work to sedentary work "to account for the limitations caused by the claimant's subjective reaction to pain."  Furthermore, the ALJ noted that he did not include in his RFC assessment the occasional postural limitations assessed by Dr. Brenner, because such limitations would "not significantly affect the sedentary occupational base." [AR 43]  *See* Soc Sec. Ruling 96-9p.  As noted by the Commissioner, when – as in this case – "a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit." *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012).     As such, I conclude that the ALJ's order weighing the medical opinion evidence in this case utilized the correct legal standards and was supported by substantial evidence.

B. RFC Assessment

Plaintiff's next argument is that the ALJ erred when assessing her RFC as a full range of sedentary work. A claimant's RFC is an administrative assessment, based on all the evidence, of how a claimant's impairments and related symptoms affect her ability to perform work-related activities. 20 C.F.R. §416.945(a); *see also* Soc. Sec. Ruling 96–5p; Soc. Sec. Ruling 96–8p ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities"). An RFC assessment is the most a claimant can do on a regular and continuing basis despite her limitations. *See* 20 C.F.R. §416.945(a)(1). Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)*; see also McDonald v. Astrue*, 492 Fed. App'x 875, 885 (10th Cir. 2012)(not selected for publication)(noting that the ALJ's RFC assessment is an administrative, rather than a medical determination). Because an RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." *Dixon v. Apfel*, 1999WL 651389 (10th Cir. 1999)(unpublished); *see also* 20 C.F.R. §416.945(a).

Plaintiff argues that the ALJ erred in "oversimplifying" her RFC to a full range of sedentary work by: 1) failing to include a bending limitation; 2) failing to weigh and consider the testimony of Plaintiff's grandmother related to Plaintiff's functional limitations; 3) failing to consider her un-named physician's limitation on her standing and sitting, and on her ability to lift, bend, or twist; and 4) failing to include the accommodations used by Plaintiff to manage her

13

pain.

I first note that in determining Plaintiff's RFC, the ALJ specifically noted that he was not including any bending limitation because such occasional limitation "will not significantly affect the sedentary occupational base." [AR 43] *See* Soc. Sec. Ruling 96-9p; Soc. Sec. Ruling 85-15 (indicating that if a person can stoop or crouch (forms of bending) occasionally in order to lift objects, the sedentary occupational base is virtually intact). As to Plaintiff's grandmother's testimony, the ALJ summarized her testimony and specifically indicated that he considered it, but the order is apparent that he did not fully accept it for the same reasons that he discredited Plaintiff's similar testimony related to her functional limitations and daily activities. [AR 42] Although the ALJ's order did not explicitly indicate that he was not convinced by or did not fully believe the grandmother's testimony, I disagree with Plaintiff's assertion that, as a result, the ALJ erred in failing to weigh her credibility. *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (in addressing the ALJ's duty to consider third-party opinion evidence, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony").

To the extent that Plaintiff argues that the ALJ failed to consider evidence of her physical limitations contained in her response to a question in her Functional Report, dated February 1, 2010 – indicating that "[m]y doc says I'm not allowed to stand for more than 90 minutes, sit for 90 minutes, lift, bend, twist, myself etc." [AR 213] – I again note that there are no medical records that corroborate this unsupported assertion, as discussed *supra*. Furthermore, Plaintiff's contention that the ALJ erred in failing to supplement the record in order to explore this claim –

when it exists only as a self-reported response to question about house and yard work and is not otherwise even mentioned in the records – without request from Plaintiff or her counsel, is without merit.  *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004)(ruling that while "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing" the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development").

Finally, Plaintiff's claim that the RFC assessed by the ALJ did not account for the accommodations required in order to manage her pain, I again disagree as the ALJ specifically adapted a sedentary range of work (as opposed to a light level of work) in order to take into account Plaintiff's subjective pain and her need to manage it.  *See Chapo v. Astrue, supra,* 682 F.3d at 1288.   Thus, contrary to Plaintiff's arguments, I conclude that her RFC assessment was sufficiently explained in the ALJ's order and was supported by substantial evidence in the record.

C.  Application of the Grids

Finally, I address Plaintiff's argument that the ALJ erred when applying the Medical-Vocational Guidelines (known as the "Grids") in her case.  The Grids consist of matrices of four factors – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of those factors exist in significant numbers in the national economy.  *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (*quoting Heckler v. Campbell*, 461 U.S. 458, 461–62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)).  When all factors coincide with the criteria of a Grid Rule, then the ALJ can rely on the Rule to establish the existence of jobs.  *Miller v. Colvin,* 2013 WL 6451183 (N.D.Okla. 2013) (unpublished)(*citing* 20

C.F.R. Pt. 404, Subpt. P.App. 2, 200(b)).  Thus, the Grids are a "short-cut method" for resolving disability questions whenever the claimant can perform a substantial majority of the work in a designated RFC category.  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).

Plaintiff argues that the ALJ's reliance on the Grids in her case constituted error in that her non-exertional impairments – her pain and her mental limitations – precluded the use of the Grids.  *See Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993)(ruling that an ALJ may not rely conclusively on the Grids unless he finds "that the claimant has no significant non-exertional impairments").  However, as discussed above, I find no error in the ALJ's RFC assessment of a full range of unskilled sedentary work which, in turn, did not include limitations for pain (but instead accounted for any pain limitation via designation of a lower exertional category) or for mental limitations (which were not supported by the medical record and, if any, were accounted for in the unskilled designation).  As such, the ALJ did not err in relying on the Grids to determine that given Plaintiff's RFC of a full range of sedentary work, along with her age, education, and work experience, jobs exist that she can perform in the national economy resulting in a findings that she was not disabled at Step Five of the sequential process.  *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988)(noting that "[u]se of the Grids is only precluded to the extent that nonexertional impairments further limit the claimant's ability of perform work at the applicable exertional level").

ACCORDINGLY, for the foregoing reasons, I AFFIRM the Commissioner's final order.

Dated: February   25  , 2014, in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE